## PETER PAPINEAU

*v.*

## MAXIME BELGARDE.

1. SECURITY FOR COSTS—*motion to dismiss must be before pleading.* A motion to dismiss a suit for want of a bond for costs, in cases where one is required before suing, must be made before a demurrer or plea in bar is filed.

2. SAME—*requiring under sec. 2, discretionary.* It is a matter of discretion with the court to require security for costs, under the second section of the Cost Act, and its decision can not be assigned for error; and it may set aside an order to show cause why security should be required at any time during the same term.

3. NEW TRIAL—*finding as to facts.* A new trial will not be granted by this court when the record does not impress the mind that the verdict is manifestly wrong. It must be clearly against the preponderance of the evidence.

4. SAME—*misconduct of jury.* A verdict will not be set aside because each juror set down the amount he was in favor of finding, which they added together, and divided the sum by twelve, where there was no previous agreement the sum thus found should be the verdict, and it was, in fact, for a less sum.

APPEAL from the Circuit Court of Ford county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Mr. CALVIN H. FREW, for the appellant.

Messrs. POLLOCK & SAMPLE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The defendant filed an affidavit in the court below, and entered a motion that plaintiff be ruled to give security for costs, because of his insolvency. The court entered a rule to show cause by a specified day, and on that day set aside the order. This action of the court is assigned for error.

The first section of the Cost Act of 1844 requires the suit to be dismissed in cases where it provides a bond shall be given if its requirements are not observed. The language is peremptory, and yet it has been held, under that section, the motion to dismiss must be made before a demurrer or plea in bar shall be filed.

But the second section provides, that in case the court shall be satisfied that the plaintiff is unable to pay the costs of suit, or that he is so unsettled as to endanger the officers in their legal demands, the court shall rule the plaintiff to give security for costs of suit, and on a failure to comply with the rule, it requires the suit to be dismissed.

This language implies discretion. It requires evidence that satisfies the court, and until so satisfied the court should not make a rule for security. The previous decisions of this court hold, that, under this provision, it is discretionary. See *Gesford* v. *Critzer*, 2 Gilm. 698, and *Selby* v. *Hutchinson*, 4 Gilm. 319, where it is held that error can not be assigned on the decision of such a motion. This has been understood, it is believed, to be the settled practice since those decisions were made. Nor does the fact that the rule was entered and set aside at all change the rule. All know that the records of the court are under the control of the court during the term at which they were entered. If, for any cause, the court becomes satisfied that the rule was improperly made, it had ample power to set it aside, and such action would not, for that reason alone, be subject to review in this court. Hence, there is no force in this objection.

It is next insisted, that the verdict is manifestly against the evidence. We have examined it with careful attention, and

considered it maturely, and must say that we think it sustains the verdict. Had appellee's evidence been alone considered, no one would say they had any doubt of the correctness of the finding; and when appellant's evidence is considered, at most it but creates a doubt of the correctness of the conclusion reached by the jury. The evidence all considered, it is not clear and certain the verdict is right, but, at the same time, it does not impress the mind that it is manifestly wrong, and we can only reverse where the preponderance is clearly against the verdict.

It is apparent to all that the jury and the judge trying the case have advantages superior to ours for ascertaining the truth, by estimating the worth of evidence. They see and hear the witnesses testify, and can detect prejudice, bias, want of information, and all that affects the value of evidence, which is denied to us, as we but see the evidence on paper, without its shading and coloring, which so materially aid in judging of evidence.

The evidence consists largely of the opinions of witnesses as to the value of the labor performed by appellee, and all are aware that on such questions evidence is rarely harmonious, and the difference in estimates usually takes a wide range. So, in this case, it varied from $15 per week to simply board worth $3 to $3.50 per week. Some of the witnesses manifestly knew but little of its value or of what appellee did, whilst others were reasonably well informed. The jury, as practical men, doubtless gave more weight to the evidence of fair, disinterested witnesses, who were well informed, than to the evidence of those who testified under the influence of prejudice, feeling or interest. It was their province to do so, and we presume they did. They considered the whole of the evidence, and returned their verdict as the result of their convictions of what it proved, and we can not say that it was unauthorized.

It is next urged, that the jury were guilty of such misconduct as should set aside their finding. The officer who had the jury in charge during their deliberations, states, in his affidavit, that each juror set down the amount he was in favor of finding, and these sums were added together, and the aggre-

gate was divided by twelve, and the result was adopted as the verdict. Four of the jurors swear, that after deliberating for some time as to their verdict, it was proposed to set down, add and divide, as stated by the bailiff, to ascertain the medium sum; that they did so, and afterward agreed upon a less sum than the amount thus found, and returned it as their verdict. The bailiff does not state nor does it appear that there was any agreement that the result of the calculation should be their verdict. We can see no possible wrong in a jury making such a calculation simply to ascertain the mean between extremes of the jury, whilst it would be reprehensible if it was done with the understanding that the result should be binding as a verdict. But such was not the case here, but, on the contrary, it was done for another purpose, and a smaller sum was, in fact, adopted as the verdict. The court below did not err in denying this motion.

Perceiving no error in the record for which the judgment should be reversed, it is affirmed.

*Judgment affirmed.*